# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

DELORIS N. BROWN,

    Plaintiff,

v.

UTILITIES BOARD, CITY OF
DAPHNE, ALABAMA,

    Defendant.

CIVIL ACTION NO.: 1:16-00093-KD-C

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and S.D. Ala. Gen. L.R. 72(a)(2)(S), on Defendant Utilities Board, City of Daphne, Alabama's ("Utilities Board") Motion for Summary Judgment, (Doc. 47), and memorandum in support, (Doc. 49), which were filed on July 28, 2017. Upon consideration of the briefs of the parties, (Docs. 49, 57, & 61), and the arguments presented during the hearing held on September 6, 2017, the Magistrate Judge recommends the Court **GRANT** Defendant Utilities Board's Motion for Summary Judgment, (Doc. 47).

### I. Procedural Background

Plaintiff Brown initiated this action on February 29, 2016. (Doc. 1). Plaintiff Brown brought six counts against Defendant Utilities Board: Count One alleges Defendant Utilities Board retaliated against Plaintiff Brown, in violation of Title VII of Civil Rights Act of 1964, as amended, when it issued her a written

reprimand; Count Two alleges Defendant Utilities Board retaliated against Plaintiff Brown, in violation of Title VII of the Civil Rights Act of 1964, as amended, when it terminated her employment; Count Three alleges Defendant Utilities Board retaliated against Plaintiff Brown, in violation of 42 U.S.C. § 1981, as amended and made actionable by 42 U.S.C. § 1983, when it issued her a written reprimand; Count Four alleges Defendant Utilities Board retaliated against Plaintiff Brown, in violation of 42 U.S.C. § 1981, as amended, and made actionable by 42 U.S.C. § 1983, when it terminated her employment; Count Five alleges Defendant Utilities Board racially discriminated against Plaintiff Brown, in violation of 42 U.S.C. § 1983, as amended, and made actionable by 42 U.S.C. § 1983, when it issued her a written reprimand; and Count Six alleges Defendant Utilities Board racially discriminated against Plaintiff Brown, in violation of 42 U.S.C. § 1983, as amended, and made actionable by 42 U.S.C. § 1983, when it terminated her employment. (Doc. 1, at 5-6).

On July 28, 2017, Defendant Utilities Board filed its Motion for Summary Judgment and memorandum in support (collectively, "motion for summary judgment"). (Docs. 47 & 49). Plaintiff Deloris Brown filed her Response to Defendant's Motion for Summary Judgment ("response"), (Doc. 57), on August 24, 2017, in which she did not address Defendant Utilities Board's arguments for summary judgment on her discrimination claims and hostile work environment claim-a claim Defendant Utilities Board addressed due to her allegation of such during her deposition. (*See* Docs. 57 & 64). Defendant Utilities Board filed its

Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("reply"), (Doc 61), on August 31, 2017. This matter came on for oral argument before the undersigned on September 6, 2017, at which Plaintiff Brown waived her claims of discrimination and hostile work environment found in Counts Five and Six. (*See* Docs. 53 & 64).

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by

reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant[s] to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, 495 F.3d at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial."'); *see Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion. This effectuates the purpose of summary judgment which 'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Thus, mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.) (internal citations and quotations omitted), *cert. denied sub nom. Jones v. Resolution Tr. Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving

4

party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *see Comer,* 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether the defendant is entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the plaintiff. *Comer,* 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than some metaphysical doubt as to the material facts. A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski,* 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Tr. Corp.,* 43 F.3d at 599. Accordingly, the Court limits its review to those arguments expressly advanced by the parties.

### III. Factual Background

**A. Utilities Board of the City of Daphne, Alabama**

Defendant Utilities Board is a public entity providing gas, water and sewer services to its customers. (Doc. 48-1, at 1). During 2013 and 2014, Defendant Utilities Board had a grievance procedure for employees to follow in the event that a disagreement arose concerning discipline or termination. (Doc. 48-1, at 1-2). Pursuant to the policy, if a disagreement is not resolved by direct discussion with the employee's supervisor, the employee should file a written grievance with the Human Resources Manager, who may proceed to conduct an investigation and find possible remedies. (Doc. 48-1, at 1-2). The Human Resources Manager is to attempt to respond and/or resolve the situation within fourteen (14) days. (Doc. 48-1, at 1). The Human Resources Manager shall advise the employee of his/her decision. (Doc. 48-1, at 1-2). If the dispute concerns the Human Resources Manager, a written grievance should be filed with the General Manager. (Doc. 48-1, at 2). Defendant Utilities Board's employee handbook states "circumstances may arise that make it appropriate to vary from or change the policies, procedures, work rules and benefits described herein. Therefore, we reserve the right to necessary changes, with or without notice." (Doc. 62, at 31). The acknowledgement page, also, states Defendant Utilities Board retains the right to change policies as it deems advisable. (Doc. 62, at 32).

**B. Plaintiff Brown's Employment with Defendant Utilities Board**

In 1995, Plaintiff Brown began her employment with Defendant Utilities Board. (Doc. 48-1, at 31). Plaintiff Brown was initially employed as the

administrative assistant to the director and held several positions before becoming human resources manager. (Doc. 48-1, at 34). As human resources manager, one of Plaintiff Brown's duties was to develop and implement policies and procedures that complied with state and federal law. (Doc. 48-1, at 34).

**C. Reorganization of Company**

In 2012, Defendant Utilities Board reorganized several of its departments. (Doc. 48-1, at 37). As a result of the reorganization, Jim Caudle, Caucasian, began overseeing the Water Collections department, which was formerly under the supervision of Woodrow Maye, African-American. (Doc. 48-1, at 2, 3, 38, 39, 41, 67, & 68). Caudle was the individual with Defendant Utilities Board who was licensed by the State of Alabama to handle wastewater collection and wastewater treatment. (Doc. 48-1, at 2). The reorganization gave Caudle direct control over a portion of the utility services that he was responsible for pursuant to Alabama Department of Environmental Management provisions. (Doc. 48-1, at 2).

**D. Carlos Butler**

In 2012, Carlos Butler worked as an employee in the wastewater collections department. (Doc. 48-1, at 40). For the last two months of 2012, Butler worked under the supervision of Caudle. (Doc. 48-1, at 3). In December 2012, Butler received his employee evaluation from Caudle. (Doc. 48-1, at 68). Caudle did not recommend a raise for Butler. (Doc. 48-1, at 68). Butler contacted Plaintiff Brown and told her he was displeased with the evaluation. (Doc. 48-1, at 43). Plaintiff Brown did not request Butler put his concerns in writing. (Doc. 48-1, at 21). Butler

requested a meeting with Plaintiff Brown, Caudle, Maye, and Danny Lyndall, who was the Utilities Operations Manager. (Doc. 48-1, at 43). At the meeting, Butler indicated he felt Caudle was being racist toward him. (Doc. 48-1, at 44). Caudle then addressed specific deficiencies in Butler's work. (Doc. 48-1, at 46). In an effort to resolve Butler's complaint, Lyndall told Plaintiff Brown he would discuss the situation with Caudle. (Doc. 48-1, at 143).

On February 22, 2013, a second meeting was held at which Butler was informed Caudle's evaluation was going to stand. (Doc. 48-1, at 22, 50, & 51). Butler filed a formal grievance with Plaintiff Brown. (Doc. 48-1, at 22 & 51). Plaintiff Brown notified Caudle, Lyndall, and Rob McElroy, who was the Director of Defendant Utilities Board, of the grievance. (Doc. 48-1, at 52). As part of Plaintiff Brown's job responsibilities, she was tasked with investigating the grievance. (Doc. 48-1, at 52 & 86). On April 23, 2013, Plaintiff Brown forwarded the results of her investigation to McElroy. (Doc. 48-1, at 24 & 53). Plaintiff Brown concluded there was a valid grievance and Caudle's evaluation was retaliatory. (Doc. 48-1, at 53). As a result, McElroy told Plaintiff Brown he wanted to meet with her about her conclusions. (Doc. 48-1, at 76).

A meeting was held on April 24, 2013, with Plaintiff Brown; McElroy; Jerry Speegle, who was legal counsel for Defendant Utilities Board; and Bob Segalla, who was Chairman of Defendant Utilities Board at which she was asked to explain her investigative process that preceded her conclusions. (Doc. 48-1, at 54, 90, & 110). McElroy felt there was not enough substance in Plaintiff Brown's investigative

8

report and her conclusions were reached without a proper investigation. (Doc. 48-1, at 90). Plaintiff Brown was told by McElroy not to disseminate her report. (Doc. 48-1, at 91, 92, & 111).

**E. Review of the Findings and Written Warning**

Tony Hoffman was retained by Defendant Utilities Board to investigate Butler's grievance. (Doc. 48-1, at 92). After a one-month investigation, Hoffman determined Plaintiff Brown had not performed an accurate and thorough investigation, and, therefore, her conclusions were flawed. (Doc. 48-1, at 93). Hoffman provided a report of his findings to McElroy. (Doc. 48-1, at 93).

On July 2, 2013, Plaintiff Brown was issued a written warning that stated, "Ms. Brown failed to timely and adequately oversee the review of an employee complaint – unreasonably prolonging the process, causing confusion and ultimately over-seeing a flawed and incomplete investigation. Ms. Brown's personal feelings/bias regarding her preferred result ultimately infected all aspects of the process." (Doc. 48-1, at 113 & 124). Plaintiff Brown filed a grievance with regard to the written warning. (Doc. 48-1, at 94).

After Plaintiff Brown filed her grievance, Defendant Utilities Board hired retired Judge Edward McDermott to review Plaintiff Brown's investigative process and determine whether it was properly performed. (Doc. 48-1, at 6-16 & 94). In March 2014, Judge McDermott issued a determination that there were no factual bases for Plaintiff Brown's findings or conclusions that Caudle's actions were racially motivated or racially discriminatory. (Doc. 48-1, at 16 & 94). Judge

9

McDermott further found no factual bases for Butler's allegations that Caudle's ratings and denial of a pay raise were racially discriminatory and created a hostile work environment. (Doc. 48, at 16).

**F. Plaintiff's Termination**

In early 2014, Defendant Utilities Board began to outsource their payroll function. (Doc. 48-1, at 96-97). During this process, it was brought to Defendant Utilities Board's attention by third-party vendors they could, also, outsource their human resources functions. (Doc. 48-1, at 97). It was determined outsourcing would result in a considerable savings to Defendant Utilities Board. (Doc. 48-1, at 113).

Over time, Defendant Utilities Board developed concerns about Plaintiff Brown's work performance. (Doc. 48-1, at 99). Plaintiff Brown's 2011 performance evaluation showed poor scores for leadership and average scores for staffing, controlling, decision-making, creativity, human relations and policymaking. (Doc. 48-1, at 115-19). Concerns were noted in regard to Plaintiff Brown's implementation of the HR Module for the company's Strategic Plan and her implementation of company policies. (Doc. 48-1, at 115 & 117). The evaluation, also, highlighted Plaintiff Brown's disregard of decisions with which she disagreed. (Doc. 48-1, at 117-18).

Plaintiff Brown's 2012 performance evaluation showed little to no correction of the issues previously address in prior years, (Doc. 48-1, at 113), and referenced the ongoing issue with her not providing information that was sought and related to

the Strategic Plan for the Utility, (Doc. 48-1, at 120). Further, McElroy stated there was an extended time when Plaintiff Brown failed to provide necessary information to implement the payroll program, and he stated there was an incident in which she informed another employee of a drafted reorganization of the company that had not yet been approved by Defendant Utilities Board, which resulted in unnecessary employee strife. (Doc. 48-1, at 113).

On April 11, 2014, Defendant Utilities Board terminated Plaintiff Brown for several reasons, including her ineffective performance as human resources manager and the cost-ineffectiveness of the human resources director position. (Doc. 48-1, at 113 & 125).

## IV. ABANDONED ISSUES

"[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Tr. Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) (citing *Road Sprinkler Fitters Local Union.* Counts Five and Six of Plaintiff Brown's Complaint allege racial discrimination based upon the written reprimand issued to her and her termination. (Doc. 1, at 5-6). Defendant Utilities Board in its motion for summary judgment argued for summary judgment on those two Counts, (*see* Doc. 49, at 10-19), Plaintiff Brown does not address those Counts in the argument section of her response, (*see* Doc. 57), and Plaintiff Brown at oral argument waived those Counts, (*see* Doc. 64). Therefore, the undersigned recommends Defendant Utilities Board's motion for summary judgment should be **GRANTED** as to Counts

11

Five and Six because they are abandoned.

## V. ANALYSIS

### A. Retaliation Standard

Counts One, Two, Three, and Four of the Plaintiff Brown's Complaint remain. (Doc. 1, at 5).

> Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Little v United Tech., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). The elements that establish retaliation claims under §§ 1981 and 1983 are the same as those required for Title VII claims. *Springer v. Convergys Customer Mgmt. Grp.*, 509 F.3d 1344, 1347 n. 1 (11th Cir. 2007). A plaintiff may prove discrimination or retaliation by relying on direct, circumstantial, or statistical evidence. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008). "Direct evidence of discrimination is 'evidence that, if believed, proves the existence of a fact without inference or presumption.'" *Dixon v. Hallmark Cos.*, 627 F.3d 849, 854 (11th Cir. 2010) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086) (11th Cir. 2004)).

> Absent direct evidence of discrimination, when analyzing claims for race-based retaliation brought under § 1981, [the Eleventh Circuit] employ[s] the tripartite analytical framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and subsequently modified in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 20 (1981). *See Patterson v. McLean Credit Union*, 491

> U.S. 164, 186, 109 S. Ct. 2363, 2377-78, 105 L. Ed. 2d. 132 (1989) *superseded in part by* Civil Rights Act of 1991, Pub. L. No. 102-166, § 101, 105 Stat. 1071, 1071-72 (codified at 42 U.S.C. § 1981); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (stating that Title VII and § 1981 "have the same requirements of proof and use the same [*McDonnell Douglas/Burdine*] analytical framework"). Under this framework, a plaintiff alleging retaliation must first establish a prima facie case by showing that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action. *Raney v. Vinson Guard Serv. Inc.*, 120 F.3d 1192, 1996 (11th Cir. 1997); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). These three elements create a presumption that the adverse action was the product of an intent to retaliate. Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action. *See Goldsmith*, 996 F.2d at 1163. "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Burdine*, 450 U.S. at 255, 101 S. Ct. at 1094-95, and "drops from the case," *id.* at 255 n.10, 101 S. Ct. at 1095 n.10. After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions. *See Raney*, 120 F.3d at 1196.

*Bryant v. Jones*, 575 F.3d 1281, at 1307-08 (11th Cir. 2009).

However, a plaintiff cannot merely quarrel with the wisdom of the employer's reason, but "must meet that reason head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988)). "Courts are not concerned with whether an employment decision is prudent or fair, but only with whether it was motivated by unlawful animus." *Pitts v. Hous. Auth. for City of*

*Huntsville, Ala.*, 262 F. App'x 953, 955 (11th Cir. 2008)[1] (citing *Damon v. Fleming Supermarkets of Fla.*, 196 F.3d 1354, 1361 (11th Cir. 1999)). For instance, the "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original)."

**B. Merits of Plaintiff's Retaliation Claims**

Plaintiff Brown contends the "written reprimand issued to her by [ ]McElroy on July 2, 2013, and her termination on April 11, 2014" were retaliation for her "(1) finding of discriminatory conduct" by Caudle during the Butler investigation, "(2) her refusal to alter her investigative findings" as directed by McElroy, and "(3) [her] allegations of harassment, intimidation[,] and retaliation." (Doc. 57, at 2).

Plaintiff Brown does not present the Court with direct evidence of racial discrimination. Therefore, in order to establish the first prong of Plaintiff Brown's *prima facie* case for retaliation that she engaged in statutorily protected expression, she "must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks v. Harden Mfg. Corp.*, 291 F.3d

---

[1] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

1307, 1312 (11th Cir. 2002) (quoting *Little v United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).

> [A] plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Little*, 103 F.3d at 960.

Plaintiff Brown's allegation of retaliation stems from her investigation into Butler's grievance and her conclusion that "there was indeed probable cause that racial unfairness may have been a factor in the Butler evaluation." (Doc 58, ¶20). While Plaintiff Brown expresses her subjective belief that her employer was engaged in an unlawful employment practice, she does not direct the Court's attention to evidence in the record to show her belief was objectively reasonable. Plaintiff Brown does not state in her affidavit the facts upon which she reached her conclusion, has not submitted her report of the Butler investigation, and, generally, has not directed the Court's attention to the facts upon which she reached her conclusion that Defendant Utilities Board was engaged in an unlawful employment practice, thus, making it impossible for the Court to determine whether her belief was objectively reasonable. Plaintiff Brown's inability to meet the first prong of her *prima facie* case warrants dismissal of her claims.

However, assuming Plaintiff Brown met all the requirements necessary to establish a *prima facie* case of retaliation, the burden would shift to Defendant

15

Utilities Board to "proffer a legitimate, non-discriminatory reason for the adverse employment action," *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994), the burden of which is "exceedingly light," 698 F.2d 1138, 1142 (11th Cir. 1983). Defendant Utilities Board argues even if Plaintiff Brown established a *prima facie* case of retaliation, it asserts legitimate, non-discriminatory reasons for the adverse employment actions. (Doc. 47, at 25). As to the April 2013 reprimand, Defendant Utilities Board reasons Plaintiff Brown was reprimanded because her Butler investigation was flawed based on the determination of Hoffman, who was retained by Defendant Utilities Board to reinvestigate Butler's grievance. (Doc. 47, at 25). As to the April 2014 termination, Defendant Utilities Board reasons Plaintiff Brown was terminated because she was "deficient in her performance of her job duties and unable to learn from past mistakes and corrective counseling," and Defendant Utilities Board "became aware of the substantial amount of money that it could save by outsourcing [Plaintiff Brown's] job duties." (Doc. 47, at 25).

> Once the employer meets its burden to produce a non-discriminatory reason for its actions, the presumption of discrimination is eliminated. *Reeves* [*v. Sanderson Plumbing Prods.*], 530 U.S. [133,] 143, 120 S. Ct. 2097[, 2106, 147 L. Ed. 2d 105 (2000)]. To survive summary judgment, the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination. *Id.*; *see also*, *Chapman* [*v. AI Transp.*], 229 F.3d [1012,] 1024 [(11th Cir. 2000) (en banc)]. This evidence must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004).

*Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005).

16

"Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir. 1984). "[A] Plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, as long as the reason is one that might motivate a reasonable employer." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001)(internal quotations and citation omitted).

Plaintiff Brown argues Judge's McDermott's investigation of the matter "verifies the fact that the Butler investigation was under Brown's authority as Human Resource Manager, and that [ ] McElroy simply interfered with [Plaintiff Brown's] work product, and improperly involved the [Defendant Utilities] Board's legal counsel in conducting a second investigation of the grievance when he had no authority to do so." (Doc. 57, at 22). However, Defendant Utilities Board asserts the company's handbook states, "[C]ircumstances may arise that make it appropriate to vary from or change the policies, procedures, work rules and benefits described herein. Therefore, we reserve the right to necessary changes, with or without prior notice," (Doc. 61, at 4; Doc. 62, at 31), as well as "[Defendant Utilities Board] reserves the right to change, add or delete benefits and policies as necessary," (Doc. 62, at 32). Defendant Utilities Board argues its action to sanction an alternative investigation was authorized by those clauses in the employee handbook and was necessary given the possible ramifications of Plaintiff Brown's investigation. (Doc. 47, at 25).

17

Further, Plaintiff Brown argues there is no evidence she did not learn from "past mistakes and corrective counseling," and Defendant Utilities Board's proffered explanation is vague. (Doc. 57, at 22). However, Defendant Utilities Board directs the Court's attention to Plaintiff Brown's negative performance evaluations in 2011 and 2012. (Doc. 62, at 36-44). McElroy, who performed Plaintiff Brown's evaluations, described those performance evaluations as follows:

> 3. Her 2011 performance evaluation indicates that [Plaintiff Brown] received a poor score for leadership and average scores for staffing, controlling, decision making, creativity, human relations and policy making. Concerns are noted regarding the implementation of the HR Module for the company's Strategic Plan. Issues are noted with [Plaintiff Brown's] implementation of company policies. A true and correct copy of that evaluation is attached hereto as Exhibit A.
> 4. As evidenced by [Plaintiff Brown's] 2012 performance evaluation, there was little to no correction of the issues previously addressed in prior years. The review again addresses the ongoing issue with [Plaintiff Brown] not providing information that was sought related to the Strategic Plan for the utility. There was also an extended period of time wherein [Plaintiff Brown] was to provide information to ADP to implement the payroll program and that information was not provided. An incident also occurred where [Plaintiff Brown] informed another employee of a drafted reorganization of the company that had not yet been approved by the Board. A true and correct copy of this decision is attached hereto as Exhibit B.

(Doc. 62, at 33-34).

After reviewing all pertinent facts, it is determined that the reasons put forth by Defendant Utilities Board for Plaintiff Brown's adverse employment actions are legitimate, non-discriminatory, and were not merely a pretext to mask discriminatory actions. Although it was her burden, Plaintiff failed to present sufficient evidence that would permit a reasonable fact finder to conclude that these

legitimate reasons proffered by the Defendant were not its true reasons, but were a pretext for discrimination.

## V. CONCLUSION

Accordingly, the Magistrate Judge **RECOMMENDS** Defendant Utilities Board's Motion for Summary Judgment, (Doc. 47), should be **GRANTED** as to all of Plaintiff Brown's claims, which should be **DISMISSED WITH PREJUDICE**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. Ala. Gen. L.R. 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate

Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 8th day of November 2017.

        <u>s/WILLIAM E. CASSADY</u>
        **UNITED STATES MAGISTRATE JUDGE**